IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MOMENTUM MEDIA GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> THAT'S GREAT NEWS, LLC and ROBERT R. ROSCOE, <br><br> Defendants. | Case No.: 2:24-cv-04031-RMG <br><br> **COMPLAINT** <br> **COPYRIGHT INFRINGEMENT** <br> **TRADEMARK INFRINGEMENT** <br> **UNFAIR COMPETITION** <br> **VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT** |

Plaintiff, Momentum Media Group, Inc. ("Momentum"), by its undersigned counsel, hereby complains of the Defendants That's Great News, LLC ("TGN") and Robert R. Roscoe (individually "Roscoe," collectively with TGN, the "Defendants," and each individually a "Defendant") and for its Complaint alleges as follows:

## STATEMENT OF THE CASE

1. Defendants are no strangers to lawsuits for copyright and trademark infringement. Their business model is based on the infringement of intellectual property from print and electronic media.

2. Defendants solicit business from people featured in print and other media by selling plaques memorializing their media appearance. Defendants do this by reproducing the copyrighted works from the media in which the article to be featured on the plaque was published. In addition to engaging in such copyright infringement, Defendants cause significant confusion in the eyes of consumers and engage in trademark infringement by using the names of the media as part of their

1

product and sales pitch.

## JURISDICTION OF THE COURT

3.      This is an action for copyright and trademark infringement, unfair competition and for related state law claims in which the Defendants stand accused of using Momentum's copyrighted works and Momentum's trademarks without authorization.

4.      This Court has federal question subject matter jurisdiction over Momentum's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) in that this is a civil action arising under the copyright laws of the United States (17 U.S.C. §§ 101, *et. seq.*) and the trademark laws of the United States (15 U.S.C. §§ 1051, *et. seq.*).  This Court has supplemental jurisdiction over the subject matter of Momentum's state law claim pursuant to 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over the Defendants because, upon information and belief, each Defendant regularly solicits and does business with customers in this judicial district, each Defendant purposefully markets and directs their infringing products to customers in this judicial district and each Defendant has caused harm in this judicial district.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to Momentum's claims occurred in this judicial district and each Defendant benefits financially from the acts of infringement occurring within this judicial district.

## THE PARTIES

7.      Momentum is a South Carolina corporation having its principal place of business on Hilton Head Island, South Carolina.

8.      Upon information and belief, TGN is a Connecticut limited liability company having its principal place of business at 900 Northrop Road, Wallingford, CT 06492.

9. Upon information and belief, Roscoe is an individual and a resident of Wallingford, CT. Upon information and belief, he is the founder, Chief Executive Officer and a member of TGN. Upon further information belief, Roscoe directs and controls the infringing activities engaged in by TGN as set forth herein.

10. Defendants have been sued in other judicial districts for acts similar to those set forth herein and, upon information and belief, Defendants are well aware of the infringing nature of their actions. Accordingly, Defendants' infringement is clearly willful.

## FACTUAL ALLEGATIONS

### A. Momentum's Business and Copyrighted Works

11. Momentum owns *Local Life*, a publication that focuses on the stories, culture and people that make Hilton Head Island, SC, Bluffton, SC and Beaufort, SC unique. Each month, Momentum uses *Local Life* to publish, by print and electronic means, articles written by Momentum employees and others on various topics and people related to Hilton Head Island, SC, Bluffton, SC and Beaufort, SC. Momentum is in the business of marketing, selling and distributing these publications throughout South Carolina and the surrounding states.

12. Momentum is the author of, and is responsible for, the creation, development and production of each issue of *Local Life*, which has significant value and has been produced and created at considerable expense.

13. Momentum also provides commemorative plaques to people and businesses that are the subjects of its articles, which plaques reproduce the contents of those articles by featuring photographs and text appearing in the articles.

14. Momentum owns all right, title, and interest in the following copyrighted works for issues of its *Local Life* publication (collectively the "Copyrighted Works"):

3

    a. U.S. Copyright Registration No. TX0009357561, titled The Creative Issue, volume 7, number 11, for the November 2023 issue (the "November Issue"). The registration was obtained within 3 months of the work's first publication. A copy of the Certificate of Registration is attached hereto as **Exhibit A**.

    b. U.S. Copyright Registration No. TX0009357575, titled The Brew Issue, volume 7, number 12, for the December 2023 issue (the "December Issue"). The registration was obtained within 3 months of the work's first publication. A copy of the Certificate of Registration is attached hereto as **Exhibit B**.

    c. U.S. Copyright Registration No. TX0009360115, titled Local Life, volume 8, number 1, for the January 2024 issue (the "January Issue"). The registration was obtained within 3 months of the work's first publication. A copy of the Certificate of Registration is attached hereto as **Exhibit C**.

15. The Copyrighted Works are original works of authorship, and Momentum is the exclusive owner of all right, title and interest in the Copyrighted Works.

16. Momentum publishes and distributes the Copyrighted Works and other issues of *Local Life* in print form and through electronic means on its website located at https://www.locallifesc.com.

17. Momentum uses the following distinctive, customized, non-functional and stylized trademark for *Local Life* (the "LOCAL LIFE Mark"), which it displays on every cover of its publications:



18. Momentum is the owner and senior user of the LOCAL LIFE Mark.

19. Momentum has used the LOCAL LIFE Mark on its publications since at least October 2017. Through the continuous and widespread use of the LOCAL LIFE Mark in connection with its high-quality publications, Momentum has attained significant goodwill among customers in South Carolina and throughout the United States. The LOCAL LIFE Mark and the goodwill of the business associated with it are of inestimable value to Momentum.

### B. TGN's Business

20. TGN promotes, assembles, manufactures and sells customized, laminated plaques to people and companies featured in newspaper and magazine articles published by third parties throughout the United States, such as *Local Life*. TGN does so either by using a tear sheet from the media article that it fabricates into a laminated plaque or by reproducing the newspaper or magazine article and fabricating the reproduction into a laminated plaque. Under both scenarios, the resulting product is a different product than the underlying newspaper or magazine.

21. Upon information and belief, Roscoe subscribes to various publications, such as *Local Life*, and provides issues of these publications to TGN for its infringing uses knowing the publication issues will be used to create materials that infringe Momentum's and other third parties' copyrights.

22. TGN markets its products by emailing advertisements to individuals or businesses featured in a newspaper or magazine article, which emails invite individuals or businesses to visit TGN's website to review and purchase the plaque offered and created by TGN.

23. The preview TGN provides includes a digital image of a plaque that reproduces an article that was published by a third party that features the person or business and prominently includes the third party's trademark. These plaques contain reproductions of photographs and other content that appeared in the media publication, which TGN copies and distributes to the

public for sale without authorization.

24. TGN also markets its infringing products on its website located at https://www.thatsgreatnews.com. The website includes numerous digital images of plaques containing digital reproductions of articles from various publications, including *Local Life*, all without authorization.

### C. TGN's Infringing Conduct.

25. TGN has marketed its products to South Carolina residents and businesses featured in *Local Life* and, in doing so, has distributed and displayed on its website previews of the plaques it offers to customers, which are images of plaques reproducing articles. These images include photographs and text from issues of *Local Life*. Each plaque being previewed also prominently features the LOCAL LIFE Mark.

26. On November 30, 2023, TGN sent an email solicitation addressed to Ren Dillard, a South Carolina resident, regarding his appearance in the December Issue. TGN also contacted Mr. Dillard by phone regarding the solicitation. TGN offered to sell Mr. Dillard a plaque that contained or reproduced *Local Life's* content. Attached as **Exhibit D** is a copy of the email sent by TGN to Mr. Dillard.

27. Upon information and belief, TGN obtained a digital copy of the December Issue when it was briefly published on Momentum's website during the proofreading process and before a final copy was published in print and released online.

28. On April 22, 2024 and again on April 29, 2024, TGN sent an email solicitation addressed to Laurel Herter, a South Carolina resident, regarding her appearance in the November Issue. TGN offered to sell Ms. Herter a plaque that contained or reproduced *Local Life's* content. TGN also offered to send the plaque to her for a free 30-day inspection period. Attached as **Exhibit**

**E** are copies of the emails sent by TGN to Ms. Herter.

29.     TGN also sent an email solicitation addressed to Jeffrey Yung, a South Carolina resident, regarding his appearance in the November Issue. TGN offered to sell Mr. Yung a plaque that contained or reproduced *Local Life's* content. Based on a mistaken assumption that TGN was endorsed or in some way associated with Momentum or *Local Life*, Mr. Yung purchased the plaque offered by TGN.

30.     Upon information and belief, TGN solicited all those featured in the November Issue, December Issue and January Issue, as well as other issues preceding and following these issues, by sending them, or making available to them, a reproduction of a plaque containing unauthorized reproductions of content from these *Local Life* issues, including words and photographs.

31.     A recipient of TGN's solicitation is directed to TGN's website, which reproduces, publishes and distributes an image of the plaque described in TGN's email solicitations. This preview of the plaque distributed by TGN reproduces, publishes and distributes a copy of Momentum's article featuring the individual or business at issue and prominently includes the LOCAL LIFE Mark. Copies of the plaque previews offered to Mr. Dillard and Ms. Herter are included in Exhibits D and E.

32.     To this day, a plaque featuring an article from the April 2024 issue of *Local Life* is being offered for sale and distribution through TGN's website as shown on the screenshot attached as **Exhibit F**.

33.     The plaque previews shown in Exhibits D, E and F reproduce, distribute and are derivative works of pages appearing in the Copyrighted Works and the April 2024 issue of *Local Life* and use the LOCAL LIFE Mark, all without Momentum's authorization or permission.

7

34. Upon information and belief, TGN has successfully lured customers in addition to Mr. Yung into purchasing plaques featuring the Copyrighted Works and other articles featured in *Local Life* based on the mistaken belief that the plaques are endorsed by or otherwise associated with Momentum or *Local Life*. Such use of the LOCAL LIFE Mark without Momentum's authorization is likely to cause (and has already caused) confusion and to deceive customers into believing that TGN and its products are affiliated with, sponsored by, or endorsed by Momentum.

35. Such unauthorized misuse of the LOCAL LIFE Mark damages Momentum's reputation and the goodwill associated with the LOCAL LIFE Mark.

36. TGN's infringing activities are directed and controlled by Roscoe who, upon information and belief, benefits pecuniarily from these infringing activities as a principal owner of TGN.

37. Defendants' conduct is willful and intentional as Defendants are well aware of Momentum's rights in the Copyrighted Works and LOCAL LIFE Mark.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (Against TGN)

38. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

39. TGN violated Momentum's copyrights when it reproduced, distributed and created derivative works of the Copyrighted Works without authorization.

40. TGN's acts constitute infringement of Momentum's rights in the Copyrighted Works protected under 17 U.S.C. § 106 of the Copyright Act of 1976.

41. TGN's acts of infringement were and are intentional and willful as evidenced by numerous previous lawsuits filed against TGN for the same type of conduct alleged by Momentum

in this Complaint.

42.     As a result of TGN's infringement of the Copyrighted Works, Momentum is entitled to a monetary award pursuant to 17 U.S.C. § 504(a) and to its attorneys' fees and costs associated with this action pursuant to 17 U.S.C. § 505.

43.     TGN's conduct causes and, unless enjoined and restrained by this Court, will continue to cause Momentum great and irreparable harm that cannot be fully compensated or measured in money.

44.     Pursuant to 17 U.S.C. §§ 502 and 503, Momentum is entitled to injunctive relief prohibiting TGN from further infringing Momentum's copyrights and ordering that TGN destroy all copies of Momentum's *Local Life* publications, including, without limitation, the Copyrighted Works, made in violation of Momentum's copyrights as Momentum has no adequate remedy at law and will suffer irreparable harm, and the balance of hardships favor Momentum and the public interest would thereby be served.

## SECOND CLAIM FOR RELIEF
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against Roscoe)

45.     Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

46.     At all relevant times Roscoe was the managing member and owner of TGN and, as such, he controlled and directed the infringing activities of TGN and benefitted financially from those infringing activities.  Roscoe was well aware of prior acts of infringement by Defendants and suits brought as a result of those acts, and directly caused these complained of actions to occur for his financial benefit.

47.     Roscoe violated Momentum's copyrights when he directed TGN to reproduce,

distribute and create derivative works of the Copyrighted Works without authorization.

48. TGN's acts, under the direction and supervision of Roscoe, constitute infringement of Momentum's rights in the Copyrighted Works protected under 17 U.S.C. § 106 of the Copyright Act of 1976.

49. TGN's acts of infringement, under the direction and supervision of Roscoe, were and are intentional and willful as evidenced by numerous previous lawsuits filed against Roscoe and TGN for the same type of conduct alleged by Momentum in this Complaint.

50. Roscoe, therefore, is vicariously liable for the infringing activities of TGN complained of herein.

## THIRD CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against Roscoe)

51. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

52. At all relevant times Roscoe was the managing member and owner of TGN and, as such, he controlled and directed the infringing activities of TGN and benefitted financially from those infringing activities.

53. Upon information and belief, Roscoe subscribed and still subscribes to *Local Life* and knowingly provided *Local Life* publications he received through those subscriptions to TGN knowing TGN would use them for its infringing purposes. Roscoe was well aware of prior acts of infringement by Defendants and suits brought as a result of those acts, and directly caused these complained of actions to occur for his financial benefit.

54. Roscoe violated Momentum's copyrights when he directed and intentionally caused TGN to reproduce, distribute and create derivative works of the Copyrighted Works

without authorization.

55. TGN's acts, with the assistance and direction of Roscoe, constitute infringement of Momentum's rights in the Copyrighted Works protected under 17 U.S.C. § 106 of the Copyright Act of 1976.

56. TGN's acts of infringement, with the assistance and direction of Roscoe, were and are intentional and willful as evidenced by numerous previous lawsuits filed against Roscoe and TGN for the same type of conduct alleged by Momentum in this Complaint.

57. Roscoe, therefore, is contributorily liable for the infringing activities of TGN complained of herein.

## FOURTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT
## (Against TGN)

58. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

59. TGN's use of the LOCAL LIFE Mark was and is "in commerce" within the meaning of the Trademark Act of 1946, as amended.

60. Momentum did not license or otherwise give permission to TGN to use the LOCAL LIFE Mark in connection with the provision of TGN's products.

61. The aforementioned acts of TGN constitute infringement of the LOCAL LIFE Mark in violation of 15 U.S.C. § 1125(a).

62. If allowed to continue, TGN's infringing acts will cause serious harm to Momentum's business, goodwill and profit, as they are likely to cause confusion among its readers and other.

63. The aforementioned acts of TGN have caused and are likely to continue to cause

confusion, mistake or deception among purchasers, and would-be purchasers of plaques produced and sold by TGN, and by those persons who are not buyers but who view the plaques, all of whom will likely be confused into believing that TGN's products originate from, or are in some way affiliated with, endorsed by or sponsored by, Momentum, or that Momentum is the source thereof.

64. Upon information and belief, and as evidenced by the previous lawsuits filed against Defendants for the exact type of conduct alleged herein by Momentum, the aforementioned acts were undertaken willfully and with the intention of causing confusion, mistake or deception. TGN's actions, knowing it had been sued for the same actions, make this case exceptional, within the meaning of 15 U.S.C. § 1117(a).

65. As a result of the acts of TGN alleged herein, Momentum has suffered and will continue to suffer irreparable harm in the nature of loss of goodwill and reputation. Unless TGN is restrained from continuing these intentional and wrongful acts, the damage to Momentum will increase and the confusion among consumers will continue.

66. Momentum has no adequate remedy at law, the balance of hardships favor Momentum and preventing TGN from using the LOCAL LIFE Mark is in the public interest.

**FIFTH CLAIM FOR RELIEF**
**VICARIOUS TRADEMARK INFRINGEMENT**
**(Against Roscoe)**

67. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

68. At all relevant times Roscoe was the managing member and owner of TGN and, as such, he controlled and directed the infringing activities of TGN and benefitted financially from those infringing activities. Roscoe was well aware of prior acts of infringement by Defendants and suits brought as a result of those acts, and directly caused these complained of actions to occur

for his financial benefit.

69. Roscoe directed TGN to use the LOCAL LIFE Mark "in commerce" within the meaning of the Trademark Act of 1946, as amended.

70. Momentum did not license or otherwise give permission to Roscoe or TGN to use the LOCAL LIFE Mark in connection with the provision of TGN's products.

71. The aforementioned acts of TGN, under the direction and supervision of Roscoe, constitute infringement of the LOCAL LIFE Mark in violation of 15 U.S.C. § 1125(a).

72. If allowed to continue, TGN's infringing acts, under the direction and supervision of Roscoe, will cause serious harm to Momentum's business, goodwill and profit, as they are likely to cause confusion among its readers and other.

73. The aforementioned acts of Roscoe and TGN have caused and are likely to continue to cause confusion, mistake or deception among purchasers, and would-be purchasers of plaques produced and sold by TGN, and by those persons who are not buyers but who view the plaques, all of whom will likely be confused into believing that TGN's products originate from, or are in some way affiliated with, endorsed by or sponsored by, Momentum, or that Momentum is the source thereof.

74. Upon information and belief, and as evidenced by the previous lawsuits filed against Defendants for the exact type of conduct alleged herein by Momentum, the aforementioned acts were undertaken willfully and with the intention of causing confusion, mistake or deception. TGN's actions, knowing it had been sued for the same actions, make this case exceptional, within the meaning of 15 U.S.C. § 1117(a).

75. Roscoe, therefore, is vicariously liable for the infringing activities of TGN complained of herein.

## SIXTH CLAIM FOR RELIEF
### CONTRIBUTORY TRADEMARK INFRINGEMENT
**(Against Roscoe)**

76. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

77. At all relevant times Roscoe was the managing member and owner of TGN and, as such, he controlled and directed the infringing activities of TGN and benefitted financially from those infringing activities.

78. Upon information and belief, Roscoe subscribed and still subscribes to *Local Life* and knowingly provided *Local Life* publications he received through those subscriptions to TGN knowing TGN would use them for its infringing purposes. Roscoe was well aware of prior acts of infringement by Defendants and suits brought as a result of those acts, and directly caused these complained of actions to occur for his financial benefit.

79. Roscoe directed and intentionally caused TGN to use the LOCAL LIFE Mark "in commerce" within the meaning of the Trademark Act of 1946, as amended.

80. Momentum did not license or otherwise give permission to Roscoe to use the LOCAL LIFE Mark in connection with the provision of TGN's products.

81. The aforementioned acts of TGN, with the assistance and direction of Roscoe, constitute infringement of the LOCAL LIFE Mark in violation of 15 U.S.C. § 1125(a).

82. If allowed to continue, TGN's infringing acts, with the assistance and direction of Roscoe, will cause serious harm to Momentum's business, goodwill and profit, as they are likely to cause confusion among its readers and other.

83. The aforementioned acts of TGN, with the assistance and direction of Roscoe, have caused and are likely to continue to cause confusion, mistake or deception among purchasers, and

would-be purchasers of plaques produced and sold by TGN, and by those persons who are not buyers but who view the plaques, all of whom will likely be confused into believing that TGN's products originate from, or are in some way affiliated with, endorsed by or sponsored by, Momentum, or that Momentum is the source thereof.

84. Upon information and belief, and as evidenced by the previous lawsuits filed against Defendants for the exact type of conduct alleged herein by Momentum, the aforementioned acts were undertaken willfully and with the intention of causing confusion, mistake or deception. TGN's actions, knowing it had been sued for the same actions, make this case exceptional, within the meaning of 15 U.S.C. § 1117(a).

85. Roscoe, therefore, is contributorily liable for the infringing activities of TGN complained of herein.

**SEVENTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION**
**(Against TGN)**

86. Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as full as if set forth verbatim herein.

87. By misappropriating the LOCAL LIFE Mark, TGN has misrepresented to the consuming public that its products originate from, are connected with, are authorized by, or are otherwise associated with Momentum and *Local Life*, thereby creating actual confusion and/or a likelihood of confusion as to the source or sponsorship of TGN's goods.

88. TGN's activities have been willful, deliberate and intended to benefit TGN at Momentum's expense and detriment.

89. TGN's activities constitute unfair competition in violation of 15 U.S.C. § 1125(a).

90. Unless enjoined by the Court, TGN's unfair activities will continue unabated and

15

will continue to cause harm to Momentum.

## EIGHTH CLAIM FOR RELIEF
## UNFAIR TRADE PRACTICES
### (Against TGN)

91.	Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as full as if set forth verbatim herein.

92.	TGN used and knowingly directly benefited from the use of a reproduction or copy of the LOCAL LIFE Mark in connection with the provision of goods as alleged herein.

93.	TGN's acts of infringement occurred during the conduct of trade or commerce, from which TGN derived an economic benefit.

94.	TGN's acts of infringement constitute unfair methods of competition and unfair or deceptive acts or practices, and such conduct, therefore, violates the South Carolina Unfair Trade Practices Act., S.C. Code Ann. §§ 39-5-20, *et. seq*.

95.	TGN's acts of infringement create a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Momentum.

96.	TGN's conduct also affects the public interest, is capable of repetition and, upon information and belief, has been repeated on numerous occasions as evidenced by TGN's various solicitations to people and business featured in *Local Life*.

97.	As a direct and proximate result of each of TGN's acts of infringement, Momentum has suffered a pecuniary loss, including, without limitation, the loss of revenue associated with sales of plaques featuring the LOCAL LIFE Mark, which revenue would have been received but for TGN's infringing acts.

98. As the direct and proximate result of the unfair methods of competition and unfair or deceptive acts and practices of TGN, Momentum has sustained injury and is entitled to recover actual damages in an amount to be proven at trial.

99. TGN's use or employment of the unfair methods of competition and unfair or deceptive acts or practices was a willful and knowing violation of S.C. Code Ann. §§ 39-5-20, *et. seq.*, and, as a result, Momentum is entitled to recover from TGN three times the actual damages that it has sustained under S.C. Code Ann. § 39-5-140.

100. Momentum is further entitled to recover its reasonable attorney's fees and court costs from TGN under S.C. Code Ann. § 39-5-140.

101. Unless enjoined by the Court, TGN's unfair competition activities will continue unabated and will continue to cause harm to Momentum.

## **PRAYER FOR RELIEF**

WHEREFORE, Momentum prays for judgment and relief against Defendants, jointly and severally, as follows:

A.  Copyright.

1. That this Court, pursuant to the powers granted it under 17 U.S.C. § 502, grant permanent injunctive relief enjoining and restraining Defendants and their officers, agents, servants, employees and related companies, and all persons acting for them, from directly or indirectly infringing the Copyrighted Works and any copyrights in Momentum's other issues of *Local Life*, whether now in existence or later created, by prohibiting Defendants and their officers, agent, servants, employees and related companies, and all persons acting for them, from reproducing, copying or creating derivative works from any works owned by Momentum;

2. That this Court, pursuant to the powers granted it under 17 U.S.C. § 503, order that

all copies of the Copyrighted Works and any of Momentum's other publications that TGN has reproduced or transferred onto any physical medium without Momentum's authorization that are in TGN's possession, custody or control be delivered to Momentum and/or destroyed, at Momentums' option;

    3.    That Defendants file with the Court and serve upon Momentum's counsel within 30 days after the entry of judgment, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the injunction order;

    4.    That this Court, pursuant to the powers granted it under 17 U.S.C. § 504, award to Momentum, and against Defendants, TGN's profits and Momentum's actual damages, or at the election of Momentum, statutory damages with a finding of willful infringement, at the election of Momentum, but in no event for an amount less than $150,000.00 for each infringement complained of herein;

B.    Trademark and Unfair Competition.

    5.    That this Court, pursuant to the powers granted it under 15 U.S.C. § 1116, grant permanent injunctive relief enjoining and restraining Defendants and their officers, agents, servants, employees and related companies, and all persons acting for them, from directly or indirectly using the LOCAL LIFE Mark, including any variations thereof, or any other trademark, logo or design similar to the LOCAL LIFE Mark that is likely to cause confusion, mistake or deception with the LOCAL LIFE Mark;

    6.    That this Court, pursuant to the powers granted it under 15 U.S.C. § 1118, order that all goods, labels, signs, prints, plaques, packages, advertisements and any other materials in the actual or constructive possession of Defendants and/or any of their agents, officers, servants and employees, bearing the LOCAL LIFE Mark, and all plates, molds, matrices and other means

of making the same, be delivered to Momentum and/or destroyed, at Momentums' option;

7. That Defendants file with the Court and serve upon Momentum's counsel within 30 days after the entry of judgment, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the injunction order;

8. That this Court, pursuant to the powers granted it under 15 U.S.C. § 1117(a), award to Momentum, and against Defendants, TGN's profits and Momentum's actual damages, a multiple as permitted of Momentum's damages, and the costs of this action and attorneys' fees and punitive damages for Defendants' violations;

C. Unfair Trade Practices.

9. That this Court, pursuant to the powers granted it under South Carolina Unfair Trade Practices Act., S.C. Code Ann. §§ 39-5-20, *et. seq*., award to Momentum, and against Defendants, TGN's profits and Momentum's actual damages, a multiple as permitted of Momentum's damages, and the costs of this action and attorneys' fees and punitive damages for Defendants' violations;

D. Accounting and Attorneys' Fees.

10. That the Court order an accounting of all profits that Defendants derived from their copyright and trademark infringement;

11. That the court, pursuant to the powers granted it under 17 U.S.C. § 505, award Momentum's attorneys' fees and costs;

12. That the Court declare that Defendants' actions are exceptional and award to Momentum its attorneys' fees pursuant to 15 U.S.C. § 1117(a); and

13. That the Court award all other such and further relief as the Court deems just and proper.

                                            Respectfully submitted,

                                            BELZER PC

Dated:  July 19, 2024          By:    */Michael C. Cerrati/*

                                        Michael C. Cerrati (S.C. Bar No. 78011)
                                        38A New Orleans Road, Suite 100
                                        Hilton Head Island, South Carolina 29928
                                        (912) 236-3001 phone
                                        (843) 271-6658 direct
                                        (912) 236-3003 fax
                                        mcerrati@belzerlaw.com
                                        *Attorney for Plaintiff*

*/Nathan C. Belzer/*
Nathan C. Belzer (G.A. Bar Number 049786)
Belzer PC
2905 Bull Street
Savannah, GA 31405
(912) 236-3001 phone
(912) 236-3003 fax
nbelzer@belzerlaw.com


*/James B. Astrachan/*
James B. Astrachan (M.D. Fed. Bar No. 03566)
Kaitlin D. Corey (M.D. Fed. Bar No. 19907)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland  21202
Telephone:  (410) 783-3526
Facsimile:   (410) 783-4040
jastrachan@gdldlaw.com
kcorey@gdldlaw.com